# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF NORTH CAROLINA
# STATESVILLE DIVISION

| | |
|---|---|
| Matthew Weaver,<br><br>        Plaintiff,<br><br>      v.<br><br>First Advantage Background Services Corporation,<br><br>        Defendant. | Case No:<br><br>JURY TRIAL DEMANDED |

## COMPLAINT

Plaintiff Matthew Weaver ("*Plaintiff*" or "*Mr. Weaver*"), by and through the undersigned counsel, complains, states and alleges against First Advantage Background Services Corporation ("*FABS Corp*" or "*Defendant*") as follows:

## INTRODUCTION

1. This action seeks to recover for violations of the Fair Credit Reporting Act (the "*FCRA*"), 15 U.S.C. § 1681 *et seq*.

2. This action seeks relief against Defendant for reporting inaccurate and/or misleading information on Plaintiff's credit report in violation of § 1681e(b); and for Defendant's failure to conduct a reasonable investigation into Plaintiff's disputes in violation of § 1681i(a).

3. Plaintiff seeks an Order enjoining Defendant's injurious conduct and to recover, *inter alia*, statutory damages, prejudgment and post-judgment interest, and reasonable attorneys' fees and expenses for injuries suffered as a result of Defendant's erroneous reporting of inaccurate information in Plaintiff's consumer background reports.

4. As a result of Defendant's conduct in misreporting background check information and failing to reasonably investigate the dispute and correct inaccuracies, Plaintiff has sustained actual damages including, but not limited to: denial of an employment resulting in: lost salary and benefits; third party dissemination of inaccurate and damaging information; emotional distress including anxiety; depression; humiliation; loss of enjoyment of life; embarrassment; unfair adverse treatment; and out-of-pocket costs in time and money.

5. Plaintiff seeks to recover monetary damages for Defendant's violations of the FCRA and to have an Order issued by this Court enjoining Defendant from persisting in its violative behaviors.

## JURISDICTION AND VENUE

6. Jurisdiction of the Court arises under 28 U.S.C. § 1331 and 15 U.S.C. § 1681p.

7. Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this judicial district.

## PARTIES

8. Plaintiff Matthew Weaver is an individual who is a citizen of the State of North Carolina with address in Lincoln County, North Carolina.

9. Plaintiff is a "consumer" as that term is defined by 15 U.S.C. § 1681a(c).

10. Defendant FABS Corp is a Florida corporation which has a principal place of business located at 1 Concourse Parkway NE, Suite 200, Atlanta, Georgia, 30328.

11. Defendant FABS CORP is a consumer reporting agency (hereinafter "*CRA*") as defined under 15 U.S.C. § 1681a(f), that regularly conducts business in this judicial district.

12. Defendant FABS CORP by contractual agreement, disseminates consumer background reports for remuneration to third parties.

## SUBSTANTIVE ALLEGATIONS OF FCRA

13. Congress enacted § 1681 *et seq.* of Title 15 of the United States Code, § 1681(a) of which states as follows:

> (1) The banking system is dependent upon fair ***and accurate*** credit reporting. ***Inaccurate credit reports directly impair the efficiency of the banking system***, and unfair credit reporting methods undermine the public confidence which is essential to the continued functioning of the banking system.
>
> (2) An elaborate mechanism has been developed for investigating and evaluating the credit worthiness, credit standing, credit capacity, character, and general reputation of consumers.
>
> (3) Consumer reporting agencies have assumed a vital role in assembling and evaluating consumer credit and other information on consumers.
>
> (4) There is a ***need to insure that consumer reporting agencies exercise their grave responsibilities with fairness***, impartiality, and a respect for the consumer's right to privacy.

(Emphases added).

14. FCRA mandates that CRAs adhere to the following duties: (i) to assure maximum possible accuracy of information when preparing consumer reports and to set up reasonable policies procedures to maintain compliance with this minimum reporting standard; and (ii) to reinvestigate the facts and circumstances surrounding a dispute by consumers and to appropriately and timely correct any inaccuracies, including by quickly notifying the furnisher and any other parties in the distribution chain of the disputed inaccuracies.

15. CRAs compile, maintain, and report information concerning the creditworthiness, character, and general reputation of consumers, including Plaintiff. That information is then made available for use by third parties in credit transactions involving consumers, for employment purposes, for the underwriting of insurance for consumers, and even housing.

16. The FCRA gives consumers the right to obtain copies of their consumer reports because Congress deemed it to be critical that consumers are aware that if an employer intends to procure a report or has already procured a report and plans to take adverse action based on the report's contents, that the consumer can review the report to ensure it does not contain any errors. These disclosure requirements under the FCRA are particularly important to consumers because consumers need to know when and how they are going to be evaluated for employment based on a consumer report.

17. Plaintiff has a legally protected interest in the Defendant fulfilling their duties under FCRA so that the credit information being furnished and reported by them is maintained fairly, with the maximum levels of confidentiality, accuracy, and relevancy.

18. Plaintiff's injury is particularized and actual and is directly traceable to Defendant's conduct. The deprivation of Plaintiff's rights will be redressed by a favorable decision herein.

## FACTUAL ALLEGATIONS

19. In or around November of 2024, Plaintiff Matthew Weaver applied for a truck driver position with Walmart, Inc. ("*Walmart*"), the position technically titled "USA Trans Truck Driver OTR".

20. The USA Trans Truck Driver OTR position offered a competitive salary as well as benefits including: medical, dental, vision and supplemental insurance plans, paid time off, a 401k plan, an associate stock purchase plan and a discount card for Walmart Stores.

21. On November 13, 2024, Walmart offered Mr. Weaver the position full-time based out of Shelby, North Carolina, contingent on a background check.

22. On or around December 3, 2024, Mr. Weaver received a letter from Walmart, Inc ("Pre-adverse Action Letter") which informed him that they may have to cancel his conditional job offer based on his background report which they received from Defendant

23. The Pre-adverse Action Letter included an employment consumer report ("background report") for Mr. Weaver which contained inaccurate information regarding his employment at his previous employer, Bulkmatic, LLC ("*Bulkmatic*").

24. Walmart's employment offer was rescinded by email on December 3, 2024.

25. Here, Bulkmatic constitutes the furnisher of information for purposes of the FCRA.

26. The employment record for Bulkmatic effectively has two misstatements within the same question.

27. Bulkmatic's employment verification inaccurately states that (1) Mr. Weaver was affiliated with agencies FAA, FTA, PHMSA, Coast Guard or non-CFL and (2) inaccurately reflects that he had alcohol tests with a result of 0.04 or higher. See screenshot below.

**Former Employment - BULKMATIC GRIFFITH, IN**
Status: Complete
Score: Fail
Date Completed: 03/Dec/2024

| | | | |
|---|---|---|---|
| Consideration Code | Employment - Multiple Considerations | | |
| Company | BULKMATIC | Line of Business | |
| Address | 2001 IN-912 GRIFFITH, IN 46319- | | |

| | Verified by First Advantage | Provided by Consumer |
|---|---|---|
| Position | LOCAL COMPANY DRIVER | LOCAL COMPANY DRIVER |
| Employment Dates | 28/Jun/2022 to 09/Sep/2022 | 02/May/2022 to 02/Sep/2022 |
| Location | | GRIFFITH |
| Reason Left | | RESIGNED |

Questionnaire

| Client Interview Question | Source Response |
|---|---|
| Was the individual in any type of DOT regulated position with your company? For example, the individual drove a commercial motor vehicle or was in a safety sensitive position. Yes or no | YES |
| If replied yes in 1, under what agency? FMCSA, FAA, FTA, PHMSA, FRA or Coast Guard? | FMCSA |
| If FMCSA, was this individual a CDL driver for your company? If Yes, continue to question 4 & skip questions 5-11. If No, continue to questions 4-21. | YES |
| What type of commercial motor vehicle did the individual drive? | TRUCK TRAILER |
| If FAA, FTA, PHMSA, Coast Guard or non-CDL, did the individual have alcohol tests with a result of 0.04 or higher? Yes or no | YES |

First Advantage Case ID WPS-301974610    Page 20 of 36 (Includes Associated Documents)

Page 19 of 29

28. In the background report, the Bulkmatic employment verification asks "If replied yes in 1, under what agency? FMCSA, FAA, FTA, PHMSA, FRA or Coast Guard?" (referred to hereinafter as the "*agency question*") and it is accurately answered as "FMCSA", which is the Federal Motor Carrier Safety Administration.

29. The FMCSA is the only agency Plaintiff is under.

30. Mr. Weaver is not under agencies FAA, FTA, PHMSA, Coast Guard or non-CDL (Collectively referred to as "other agencies").

31. In addition, Mr. Weaver has never tested positive for alcohol at or above 0.04 on any alcohol test.

32. Upon information and belief, the employee who completed the employment verification for Bulkmatic mistakenly answered "YES" for the question "If FAA, FTA, PHMSA, Coast Guard or non-CDL, did the individual have alcohol tests with a result of 0.04 or higher? Yes or No" (referred to hereinafter as the "*alcohol question*").

33. This alcohol question should have either been left blank, answered "not applicable" or answered "No".

34. On or around December 3, 2024, Mr. Weaver disputed the alcohol question with Defendant directly over the phone, by explaining to Defendant's representative that he is not under the agencies FAA, FTA, PHMSA, Coast Guard or non-CDL.

35. In this December 3, 2024, phone call, Mr. Weaver also detailed to Defendant that the alcohol question shouldn't even apply or be prompted given that he didn't work under those other agencies and also stressed that he never had an alcohol test with that outcome.

36. Upon information and belief, rather than submitting information regarding Mr. Weaver's dispute for Bulkmatic to respond to, on December 17, 2024, Defendant submitted another verification form to Bulkmatic via fax, essentially re-requesting the same information, without specifying Mr. Weaver's points of contention (referred to as "*Re-verification request*").

37. This December 17, 2024, re-verification request merely stated: "*In reference to the Employment Verification request being performed on behalf of MATTHEW WEAEVER, we need additional information from you to complete this order.*"

38. Defendant's Re-verification request to Bulkmatic failed to provide a resuscitation of or a summary of Plaintiff's substantive dispute, as required by the FCRA.

39. Upon information and belief, as provided by Bulkmatic's representative who

completed the Defendant's employment verification forms, Defendant did not inform her of what Mr. Weaver was disputing and why.

40. As a result of Defendant's porous Re-verification request, Bulkmatic's representative sent in the same verification form she submitted prior, as she concluded that Defendant simply needed the same information again.

41. Bulkmatic's representative had no reason to believe that there was anything wrong with the information she sent in her previous submission.

42. Had Defendant complied with the FCRA and provided Bulkmatic with all information relevant to the dispute, then Bulkmatic's representative would have reason to review the answers provided and modify her error, rather than effectively doubling down on an error she was unaware of.

43. Defendant's failure to provide Bulkmatic with any information to contextualize Mr. Weaver's dispute cannot be considered a reasonable investigation by FCRA standards.

44. Furthermore, Defendant should have been aware that Bulkmatic's employment verification was flawed as it answered questions regarding agencies that Mr. Weaver was unaffiliated with, and Defendant's failure to identify this error is indicative of its failure to practice reasonable procedures to ensure maximum possible accurate.

45. Upon receiving notice of Plaintiff's dispute and the fact that he was not under these agencies, which Bulkmatic acknowledged in the verification, Defendant should have realized or had sufficient reason to consider that there were problems with Bulkmatic's answers that required clarification.

46. To then receive these identical flawed answers following its Re-verification request, Defendant should have done further inquiry by phone, email, or otherwise to ascertain what agencies Mr. Weaver was under and if the alcohol and agency questions were properly answered, because as-is they were wrong and/or incomplete.

47. Upon information and belief, Defendant merely parroted information they received from Bulkmatic, without any reasonable inquiry or deliberation.

48. A reasonable investigation would have resulted in the realization that Bulkmatic's answers were erroneous on their face.

49. If Mr. Weaver was only under FMCSA, then Bulkmatic's answer to the alcohol question was improper, because that question is only relevant to FAA, FTA, PHMSA, Coast Guard

or non-CDL.

50. Even if the correct answer to the alcohol question was yes, that would render the agency question as false because it failed to list any of the other agencies.

51. It is clear based on these readily verifiable inconsistencies that Defendant failed to handle this investigation with care or diligence, and that their dispute constituted a bare minimum effort, insufficient to be deemed as reasonable under the FCRA.

52. Defendant's failure to practice reasonable procedures to assure maximum possible accuracy and conduct reasonable investigations cost Mr. Weaver the opportunity to be employed by Walmart or to request reconsideration from them.

53. As a result of Defendant's failure to reasonably investigate the dispute and correct inaccuracies, Plaintiff has sustained actual damages including, but not limited to: denial of employment opportunity resulting in lost salary and benefits; third party dissemination of inaccurate and damaging information; emotional distress including anxiety; embarrassment; humiliation; loss of enjoyment of life; and bouts of anger and frustration due to opportunities he felt were robbed from him despite his best efforts.

## COUNT I
### Defendant's Violations of the FCRA, 15 U.S.C. § 1681e(b)

54. Plaintiff repeats and realleges the foregoing paragraphs as if fully restated herein below.

55. Defendant systemically violated 15 U.S.C. § 1681e(b) by failing to adhere to, maintain and/or establish reasonable procedures to assure maximum possible accuracy in the preparation, maintenance, and dissemination of Plaintiff's consumer report(s).

56. Upon information and belief, Defendant's conduct in the instant matter is representative of their normal policies and procedures (or lack thereof) for maintaining accurate consumer reporting.

57. In violation of §§ 1681e(b), Defendant failed to follow reasonable procedures to assure maximum possible accuracy of the information attributable to Plaintiff, by reporting inaccurate information in Plaintiff's consumer background report which they knew or had reason to know was inaccurate because the answers to whether Plaintiff had an alcohol test of 0.04 or higher being yes, contradicted the answer given to which agency Plaintiff was under.

58. Defendant also violated § 1681e(b) via their handling of the investigation under §

7

1681(i), by failing to provide Bulkmatic with all information related to Plaintiff's dispute.

59. Defendant's actions were willful and intentional, or, alternatively, performed with reckless disregard for their duties under the FCRA to provide reports with maximum possible accuracy.

60. Alternatively, Defendant's acted negligently in their failure to ensure maximum possible accuracy on Plaintiff's consumer report.

61. As a result of Defendant's violations of 15 U.S.C. §§ 1681e(b), Plaintiff suffered statutory and actual damages as described herein and is entitled to recover actual damages and punitive damages, pursuant to 15 U.S.C. §§ 1681n and 1681o.

62. For the foregoing reasons, Defendant violated 15 U.S.C. § 1681e(b) and are liable to Plaintiff for actual damages, statutory damages, punitive damages, costs and attorneys' fees in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and § 1681o.

## COUNT II
### Defendant's Violations of the FCRA, 15 U.S.C. § 1681i et seq

63. Plaintiff repeats and realleges the foregoing paragraphs as if same were fully restated herein below.

64. Defendant violated 15 U.S.C. § 1681i(a)(1) by failing to conduct reasonable reinvestigations to determine whether the disputed information was accurate and record the current status of the disputed information or delete the item from Plaintiff's consumer report.

65. Defendant violated 15 U.S.C. § 1681i(a)(4) by failing to review and consider all relevant information submitted by Plaintiff regarding the dispute.

66. Defendant violated 15 U.S.C. § 1681i(a)(5)(A) by failing to promptly delete the disputed inaccurate information from Plaintiff's consumer file or correct the inaccurate information upon reinvestigation.

67. Upon information and belief, Defendant never: (i) contacted any third parties that would have relevant information concerning Plaintiff's dispute; (ii) researched current filings and documents for accuracy; any relevant information concerning Plaintiff's dispute to Employer Defendant; or (iii) or consulted the proper personnel to ascertain clarity on the current state and accuracy of Plaintiff's background information. As such, there is no evidence of a reasonable investigation being conducted or any investigation whatsoever.

68. Upon information and belief, Defendant violated 15 U.S.C. § 1681i(a)(2)(B) when it failed to promptly provide to the person who provided the information in dispute all relevant information regarding the dispute that is received by the agency from the consumer.

69. Here, the furnisher of information, Bulkmatic, was not aware during the dispute process that there was an active dispute nor informed as to what questions in the employment verification required re-review, despite this information being provided to Defendant by Plaintiff.

70. A reasonable investigation should have resulted in the realization that either Plaintiff was associated with more agencies than the answer provided which was FMSCA or that the answer to the alcohol question couldn't have been "Yes" as those agencies were not listed in the agency question.

71. As a result of Defendant's violations of 15 U.S.C. § 1681, Plaintiff suffered actual damages which have been further described above in the statement of facts.

72. Defendant's violations were willful because they had knowledge of the issue after receiving a detailed dispute and/or exhibited a reckless disregard for the information provided in that dispute, rendering Defendant individually liable for statutory and punitive damages and reasonable attorney's fees in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

73. In the alternative, Defendant was negligent, which entitles Plaintiff to recovery under 15 U.S.C. § 1681o along with reasonable attorney's fees.

## JURY DEMAND

74. Pursuant to Federal Rule of Civil Procedure 38, Plaintiff hereby demands a trial by jury of all issues triable by jury.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests the Court enter judgment against Defendant, as follows:

a. Adjudging that Defendant's actions violated the FCRA;
b. Enjoining Defendant from persisting in violative behaviors and requiring Defendant to correct or otherwise delete the accounts at issue in Plaintiff's credit report;
c. Granting Plaintiff actual damages against Defendant pursuant to 15 U.S.C. §§ 1681n(a)(1)(A) and 1681o(a);

d. Granting Plaintiff statutory damages against Defendant pursuant to 15 U.S.C. § 1681n(a)(1)(A);

e. Granting Plaintiff punitive damages against Defendant pursuant to 15 U.S.C. § 1681n(a)(2);

f. Granting Plaintiff costs and reasonable attorney's fees against the Defendant pursuant to 15 U.S.C. §§ 1681n(c) and 1681o(b);

g. Awarding Plaintiff any pre-judgment and post-judgment interest as may be allowed under the law; and

h. Such other and further relief as the Court determines is just and proper.

DATED: February 27, 2025

**SANDERS LAW GROUP**

By: */s Larita Yusuf*
Larita Yusuf, Esq. (NC Bar Number: 49160)
Attorney for Plaintiff
333 Earle Ovington Boulevard, Suite 402
Uniondale, New York 11553
Office: (516) 203-7600 ext 3227
Fax: (516) 282-7878
Email: lyusuf@sanderslaw.group

Our File No.: 131156